AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

In the matter of the search of

THE PREMISES LOCATED AT: 313 SOUTH DADE AVENUE, FERGUSON, MO 63135, further described and depicted in Attachment A.

)
)
)
)
)
)
)

Case No.    4:25 MJ 2276 JSD

SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, _____Derek G. Velazco_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the _____EASTERN_____ District of _____MISSOURI_____, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a) | Possession with intent to distribute controlled substances |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

*Derek G. Velazco*
_____
*Applicant's signature*

Special Agent Derek G. Velazco, FBI
_____
*Printed name and title*

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date:    09/08/2025

_____
*Judge's signature*

City and state:  St. Louis, Missouri

Honorable Joseph S. Dueker, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA:   BOYCE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF )
THE PREMISES LOCATED AT: **313** )   No. 4:25 MJ 2276 JSD
**SOUTH DADE AVENUE, FERGUSON,** )
**MO 63135, further described and depicted** )
**in Attachment A**. )   FILED UNDER SEAL

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, **DEREK G. VELAZCO**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as **313 South Dade Avenue, Ferguson, MO 63135 (the subject premises)**, further described in Attachment A, for the things described in Attachment B.

2.     I, Derek G. Velazco, am a Special Agent with the Federal Bureau of Investigation (FBI) in the St. Louis Division. I have been an FBI agent since March 2017. In connection with my official FBI duties, I investigate criminal violations of the Controlled Substances Act. I have received training in the enforcement of federal narcotics laws, and I have been involved in all aspects of narcotics trafficking investigations, including (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from

drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence.  I have also received training and participated in investigations involving the interception of both wire communications and electronic communications involving digital display paging devices.  Finally, I have testified in grand jury proceedings for violations of federal narcotics laws.  Based on my training and experience as an FBI Special Agent, I am familiar with the ways in which narcotics dealers conduct their drug-related business, including, but not limited to, their methods of importing and distributing narcotics; their use of telephones and digital display paging devices, and their use of numerical codes and code words to identify themselves; the nature of the communication and/or to conduct their transactions; and their concealment of drug proceeds in real and personal property as well as legitimate businesses.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a) and 846 (distribution of fentanyl and cocaine and conspiracy to distribute fentanyl and cocaine) have been committed by **WILBERT ROBINSON**, or other persons known and unknown. There is also probable cause to search the locations described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.      The St. Louis Division of the FBI is investigating **WILBERT ROBINSON**. **(ROBINSON)** for his involvement in manufacturing, distributing, or dispensing a controlled substance in violation of 21 U.S.C., §§ 841 and 846(a).

6.      As illustrated below, since August 2025 and **ROBINSON** has been, and currently is, engaged in the sale of illegal narcotics to include fentanyl at his residence **the subject premises**. **ROBINSON** is currently on parole from the Missouri Department of Corrections (MODOC) system for his previous, state-level convictions related to Delivery of a Controlled Substance, Distribution/Manufacturing of a Controlled Substance, and Possession of a Firearm.

7.      On August 11, 2025, the Rolla Police Department began an investigation into a resident of Rolla, MO who was found to be in possession of a significant amount of fentanyl. The individual (hereinafter the "cooperating party" or "CP") indicated to officers he would like to assist in their ongoing investigation in exchange for future legal consideration. At this time Rolla Police Officers contacted personnel assigned to the Rolla Area Drug Enforcement (RADE) task force to assist in the investigation.

8.      RADE officer Brandon Ketzler contacted the CP. The CP provided a consent search of his address in Rolla, MO. At this time, 48 grams of fentanyl and one gram of Xanax were seized. Additionally, the CP made a statement to Ketzler indicating the following: the fentanyl had come from Wilbert **ROBINSON**. The CP had first met **ROBINSON** in Rolla, MO. **ROBINSON** then gave the CP a ride to **ROBINSON's** home which was located at 313 South

3

Dade Ave., Ferguson, MO (**the subject premises**).  The travel by the CP to **the subject premises** occurred on or about August 11, 2025.

9.       Upon arriving at **the subject premises, ROBINSON** "fronted" the CP fentanyl, expecting payment in the future for the drugs. During this same trip, the CP spent the night at **the subject premises.** Moreover, the CP also reported **ROBINSON** was engaged in possession of a Glock pistol, which he kept at **the subject premises.** The CP reported **ROBINSON** was involved in distributing large amounts of fentanyl, as well as other narcotics. The CP also stated **ROBINSON** would engage in manufacturing the drugs at **the subject premises.**

10.       On August 21, 2025, at the direction of the FBI, a cooperating party (CP) contacted **ROBINSON** to arrange a purchase of fentanyl. Prior to the controlled purchase the CP met with investigators at a prearranged location. The CP and the vehicle used by the CP were searched for contraband. None was located during the search.  Additionally, the CP was provided $1100 in cash and three recording devices which the CP secured on themselves.

11.       The CP drove to **the subject premises** and met with **ROBINSON**.  In exchange for the money provided to the CP, **ROBINSON** provided the CP a bag of multi-colored capsules in a plastic bag, which he represented as fentanyl. A still-shot image from the video depicting the transaction is included below.  In this image, **ROBINSON** is shown providing the drugs to the CP.

4



12.     Additionally, the video recording also captured **ROBINSON** "capping" fentanyl into capsules using specialized equipment. A still-shot image of this process is included below.



13.    After the controlled purchase was completed, the evidence was transported a few days later to the St. Louis Metropolitan Police Department Laboratory for analysis.  Upon review, the SLMPD Lab found the plastic bag provided by **ROBINSON** contained 15.21 grams of methamphetamine in a plastic baggie, which was inside the larger plastic bag containing multi-colored capsules.

14.    Further analysis found that the capsules which **ROBINSON** represented as fentanyl were found by the laboratory to be heroin. The total weight of the heroin was found to be 19.54 grams.

15.    On August 27, 2025, Special Agent Velazco and other FBI agents requested the aforementioned CP to conduct a second controlled purchase from **ROBINSON**. Prior to the purchase, the CP contacted **ROBINSON** via telephone to discuss the deal. Again, the CP was advised to travel to, 313 South Dade Ave., Ferguson, MO, **the subject premises.** Prior to the controlled purchase, the CP met investigators at a pre-arranged location, both the CP and their vehicle were searched for contraband. None was located. The CP was provided money to complete the purchase, as well several recording devices.

16.    At this time, the CP traveled again to **ROBINSON's** residence, **the subject premises** while being monitored by an FBI surveillance team comprised of Special Agent Velazco and other agents. Again, the CP completed a purchase from **ROBINSON** within **the subject premises**. Additionally, during the purchase, **ROBINSON** engaged in conversation with the CP and explained how he, **ROBINSON**, prepares the drugs for sale and provided extensive

background information about his involvement in the movement of drugs as part of a larger organization.

17.     Following the completion of the transaction, the CP exited **the subject residence** and traveled back to the prearranged location. During this travel, the CP remained under the observation of the FBI surveillance team. Once back at the prearranged location, the CP provided SA Velazco and other agents with a plastic baggie containing suspected drugs. The CP confirmed again that **ROBINSON** represented the drugs in the bag to be fentanyl. Lab analysis for the drugs collected during the second purchase are pending.

18.     During the debriefing, the CP stated they did not see **ROBINSON** in possession of a firearm during the first or second purchase but had seen **ROBINSON** with a firearm during previous interactions predating our investigation. The CP stated the firearm was a Glock-style firearm, which they also believed to be .40 caliber. The last time the CP saw it had been when **ROBINSON** withdrew the weapon from his waistline and placed the firearm down on a table-like surface. The CP did not provide a specific timeframe for this observation. Moreover, during the first purchase, the recording also captured a conversation between the CP, and a woman who is assessed by investigators to be **ROBINSON's** girlfriend. During this conversation, the woman makes statements which indicate **ROBINSON** regularly carries a firearm, which his status as a felon precludes him from doing.

**LOCATIONS TO BE SEARCHED**

19.     The locations to be searched are **313 South Dade Avenue, Ferguson, MO 63135, MO 63118. The subject premises** are more fully described as follows:

    a.  Location #1 is a single-story, single-family residence with red-colored brickwork and a white trim. The front door is white. When facing **the subject premises** from the street, there is a large window bay located to the left of the door.  **The subject premises** is in Ferguson, Missouri, within the Eastern District of Missouri. A photograph of **the subject premises** appears in Attachment A.

\* \* \*

20.     Based on training and experience, as well as the totality of this investigation and the information outlined above, I believe that **ROBINSON** and his yet to be identified criminal associates are utilizing **the subject premises** to store controlled substances and proceeds from the sale of controlled substances in violation of Title 21, United States Codes, Sections 841(a)(1) and 846, and **the subject premises** contains evidence, fruits, and instrumentalities of the violations of those statutes

21.     Indeed, as part of my experience and training and that of other law enforcement officers participating in the investigation, we have accumulated information and training in the areas of narcotics based economic crime.  I have had extensive experience, as have other members of the investigating team, in interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing, and concealing of

8

proceeds of narcotics trafficking.  Based upon my and the investigating team's experience and our participation in other pending and completed controlled substances and/or financial investigations involving ongoing, extensive drug distribution conspiracies involving large amounts of controlled substances and money, I know the following:

a.    It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in their residence, vehicles, and other buildings under their control.

b.    Drug traffickers frequently keep near at hand, in their residence, vehicles or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs.  These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

c.    Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances.  Drug traffickers commonly "front" (provide drugs on consignment) controlled substances to their clients.  The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control.

d.    Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way)

9

pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with  persons known to traffic in controlled substances or to facilitate such trafficking.  These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

e.      Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product.  These traffickers frequently maintain these photographs in their residence or other buildings under their control.

f.      Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances.

g.      When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits.  I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts.  They maintain record of these transactions in their residence or other buildings under their control.

10

h.      Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in narcotics prosecutions.

i.      Drug traffickers frequently possess firearms and/or other weapons in their residence, vehicles or other buildings under their control to protect their methamphetamine and/or United States currency.

j.      It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for its distribution elsewhere in the United States.  After purchasing drugs, these drug traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs.  The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers.  Records of their travel are frequently kept in their residence or other buildings under their control.

**CONCLUSION**

22.     Based on the foregoing I submit that this affidavit supports probable cause for a warrant to search **the subject premises** described in Attachment A and seize the items described in Attachment B.

23.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of

11

the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I state under penalty of perjury the forgoing is true and correct.

Respectfully submitted,

*Derek G. Velazco*

Derek G. Velazco
Special Agent
FBI

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to
Federal Rules of Criminal Procedure 4.1 and 41 on this _8th_ day of September 2025.

HONORABLE JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

*Properties to be searched*

**Location #1:**

The location to be searched is **313 South Dade Avenue, Ferguson MO (the subject premises)**. Location #1 is a single-story, single-family residence with yellow-colored siding and reddish colored roof. There is a black, screen door on the residence and the numbers "313" are located to the right of the front door. When facing **the subject premises** there are windows located on either side of the door, as well as a small window located to the far-left side of the front of the home. **The subject premises** is in Ferguson, Missouri, within the Eastern District of Missouri.



## ATTACHMENT B

*Property to be seized*

1.      All records and information relating to violations of Title 21, United States Code, Sections 841(a)(1) and 846, that constitutes fruits, evidence, and instrumentalities of those violations involving **WILBERT ROBINSON** and others known and unknown, including:

a.  Controlled substances;

b.  Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

c.  Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

d.  Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service;

e.  Cellular telephones, digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room and/or digital communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

f.  Photographs, in particular photographs of co-conspirators, assets and/or controlled substances;

2

g. United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

h. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

i. Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from Ferguson, Missouri and elsewhere;

j. Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

k. Firearms and/or weapons; and

l. Security systems, cameras, cables, recording devices, monitors, and other items or equipment pertaining to video surveillance of **the subject premises**.

3